
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CR-00060-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | SUPERSEDING |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| PHIL CAPRICE HOWARD | ) | |

The United States Attorney charges that:

## COUNT ONE

On or about January 24, 2017, in the Eastern District of North Carolina, PHIL CAPRICE HOWARD, defendant herein, a resident of Pink Hill, North Carolina, did willfully make and subscribe a false U.S. Individual Income Tax Return, IRS Form 1040, for the calendar year 2014, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter, in that the said return: (1) failed to disclose that PHIL CAPRICE HOWARD was engaged in the operation of a business activity related to the purchase, sale, and transportation of cut-rag tobacco as well as farming activities from which he derived gross receipts or sales; and (2) stated on line 22 of Form 1040 that his total income was $18,775.00, whereas PHIL CAPRICE HOWARD then well knew that his total income was substantially more, all in violation of Title 26, United States Code, Section 7206(1).

## COUNT TWO

## BACKGROUND

At all times relevant to this Superseding Criminal Information,

1. PHIL CAPRICE HOWARD, defendant herein, was a resident of Pink Hill, North Carolina.

2. New Duplin Tobacco Warehouse, Inc. was a North Carolina corporation located in Wallace, North Carolina, engaged in the business of tobacco and grain sales.

3. Tinidril, Inc. ("Tinidril") was a North Carolina corporation located in Raeford, North Carolina, engaged in the business of tobacco sales.

4. Legato Enterprises, Inc. ("Legato") was a North Carolina corporation located in Laurinburg, North Carolina, engaged in the business of tobacco sales.

5. Tobacco Rag Processors, Inc. was a North Carolina corporation located in Wilson, North Carolina, engaged in the business of tobacco processing.

6. Alliance One Specialty Products, LLC was a North Carolina corporation located in Wilson, North Carolina, engaged in the business of tobacco processing.

7. Sandhills Tobacco Inc. was a North Carolina corporation, located in Wilson, North Carolina, engaged in the business of wholesale and retail sales of tobacco products.

8. Akwesasne was a Mohawk Nation territory that straddled the United States and Canada borders and state (New York) and provincial (Ontario and Quebec) boundaries on both banks of the St. Lawrence River.

9. The portion of the Akwesasne Indian reservation in the United States was located in Franklin County, New York.

10. Kahnawake was a Mohawk Nation territory located on the south shore of the St. Lawrence River in Quebec, Canada, across from Montreal.

11. Cut-rag tobacco was tobacco cut into fine strips and used to manufacture cigarettes.

12. The Canadian federal government imposed excise duties on cut-rag tobacco imported into Canada. The Quebec provincial government also imposed taxes on the sale of cut-rag tobacco. When cut-rag tobacco was smuggled into Canada and one or more of those taxes were not paid, Canadian cigarette manufacturers that produced cigarettes with smuggled cut-rag tobacco earned a larger profit.

## THE CONSPIRACY

13. Beginning in or about 2010, and continuing up through and including January 16, 2019, the exact dates being unknown, in the Eastern District of North Carolina and elsewhere, PHIL CAPRICE HOWARD, defendant herein, along with others known and unknown to the United States, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1343,

3

knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS

14. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a. HOWARD purchased and caused to be purchased cut-rag tobacco from New Duplin Warehouse, Inc. and TRP.

b. HOWARD purchased and caused to be purchased cut-rag tobacco from TRP through Tinidril and Legato.

c. HOWARD purchased and caused to be purchased cut-rag tobacco from Alliance One Specialty Products LLC through Sandhills Tobacco Inc.

d. HOWARD also purchased cut-rag tobacco directly from TRP.

e. On at least 221 occasions, HOWARD arranged for truck drivers to transport the cut-rag tobacco from Wilson, North Carolina, to New York, on or near the Akwesasne Reservation.

f. The co-conspirators thereafter arranged for the cut-rag tobacco to be smuggled into Canada to avoid Canadian federal excise duties and provincial taxes.

4

g. Between 2010 and 2019, the conspirators sold and caused to be sold, transported and caused to be transported, and smuggled and caused to be smuggled, at least 6,766,103 pounds of cut-rag tobacco from North Carolina to Canada.

h. HOWARD received payment for the cut-rag tobacco primarily in the form of U.S. currency. Payments averaged in excess of $80,000 per tractor-trailer load of cut-rag tobacco. HOWARD did not file a Form 8300 for any of the receipts of cash.

i. HOWARD arranged for truck drivers to transport cash received from the sale of the cut-rag tobacco back to the Eastern District of North Carolina.

j. HOWARD also received payment for the cut-rag tobacco in the form of cigarettes.

k. HOWARD arranged for truck drivers to transport the cigarettes from New York to the Eastern District of North Carolina. The truck drivers used false bills of lading to conceal the fact that the cigarettes were being delivered to HOWARD.

l. Between 2010 and 2019, HOWARD communicated with the drivers via cellular phones, including "burner" phones, to arrange for the transportation of cut-rag tobacco, cigarettes, and/or cash.

m. Between 2010 and 2019, the exact dates being unknown, the conspirators caused payments for cut-rag tobacco shipments to be made to HOWARD via cash and interstate and foreign wire transfers.

5

n. The conspirators arranged for third-parties to make the wire transfers to HOWARD and paid the third-parties for executing such wire transfers.

o. On or about the dates set forth below, HOWARD, defendant herein, and others both known and unknown to the United States, did transmit and caused to be transmitted by means of wire communication, in interstate and foreign commerce, the following wire transfers of money:

| DATE (on or about) | ORIGIN OF WIRE TRANSFER | AMOUNT ($US) |
|---|---|---|
| 6/23/2010 | Individual with initial "DS" Newton Falls NY | 5,159.50 |
| 6/23/2010 | Individual with initial "DBS" Star Lake, NY | 10,319.00 |
| 7/29/2010 | Individual with initials "GLH" Montreal - Canada | 44,997.00 |
| 8/10/2010 | Individual with initials "FD" Kahnawake Quebec - Canada | 32,863.46 |
| 8/10/2010 | Individual with initials "LD" Kahnawake Quebec | 32,386.82 |
| 8/10/2010 | Another Individual with initials "LD" Kahnawake Quebec - Canada | 31,975.00 |
| 9/17/2010 | Sandhills Enterprises Ontario - Canada | 11,254.00 |
| 5/5/2016 | Nation Trading Hogansburg NY | 2,000.00 |
| 5/10/2016 | Nation Trading Hogansburg NY | 78,032.00 |
| 5/11/2016 | Individual with initials "GH" Bombay NY | 49,985.00 |
| 5/13/2016 | D&B Smokes Bombay NY | 26,000.00 |
| 5/17/2016 | Individual with initials "JL" St Regis Quebec - Canada | 35,990.00 |
| 5/24/2016 | Nation Trading Hogansburg NY | 60,000.00 |
| 5/24/2016 | Individual with initials "CD" Kahnawake Quebec - Canada | 89,965.00 |

| | | |
|---|---|---|
| 5/24/2016 | Individual with initials "RD" Kahnawake Quebec - Canada | 39,975.00 |
| 6/1/2016 | Nation Trading Hogansburg NY | 111,540.00 |
| 6/3/2016 | Nation Trading Hogansburg NY | 85,000.00 |
| 6/8/2016 | Individual with initials "CD" Kahnawake Quebec - Canada | 95,965.00 |
| 6/9/2016 | Nation Trading Hogansburg NY | 85,000.00 |
| 6/21/2016 | Nation Trading Hogansburg NY | 96,192.00 |
| 7/18/2016 | Individual with initials "GH" Bombay NY | 74,985.00 |
| 8/16/2016 | Individual with initials "GH" Bombay NY | 74,985.00 |
| 8/17/2016 | Individual with initials "CD" Kahnawake Quebec - Canada | 95,965.00 |
| 9/19/2016 | Individual with initials "GH" Bombay NY | 74,985.00 |
| 10/14/2016 | Individual with initials "GH" Bombay NY | 64,985.00 |
| 11/28/2016 | Individual with initials "GH" Bombay NY | 49,985.00 |

p. HOWARD used at least $8,577,000 cash proceeds to pay for additional loads of cut-rag tobacco through third-parties such as Tinidril.

q. HOWARD further caused unindicted co-conspirators to send approximately $2,500,000 in payments on his account at Tinidril. The unindicted co-conspirators concealed and attempted to conceal the source of the funds by causing third-parties to make payments directly payable to Tinidril, but to be applied toward HOWARD's account for the purchase of cut-rag tobacco through Tinidril, as detailed in the chart below:

7

| Transaction Date | Statement Date | From | Amount |
| --- | --- | --- | --- |
| 10/28/2011 | 10/29/2011 | Company A, Check #1158 | $40,000.00 |
| 8/23/2012 | 8/28/2012 | Company B, Check #5790 | $77,650.00 |
| 9/4/2012 | 9/5/2012 | Company B, Check #5947 | $77,616.00 |
| 9/24/2012 | 9/26/2012 | Individual A Official Check #5004806222 | $52,864.00 |
| 9/25/2012 | 9/26/2012 | Company C, Cashier's Check #08338203 | $20,000.00 |
| 10/8/2012 | 10/10/2012 | Company B, Check #6288 | $72,864.00 |
| 10/8/2012 | 10/10/2012 | Company B, Check #6289 | $72,864.00 |
| 10/14/2012 | 10/22/2012 | Company B, Check #6337 | $20,818.00 |
| 11/1/2012 | 11/2/2012 | Company B, Check #6403 | $58,000.00 |
| 4/15/2013 | 4/18/2013 | Company A, Check #1058 | $65,400.00 |
| 4/22/2013 | 4/23/2013 | Company B, Check #6971 | $79,200.00 |
| 5/2/2013 | 5/2/2013 | Company A, Check #1090 | $17,220.00 |
| 5/10/2013 | 5/13/2013 | Company B, Check #7116 | $108,400.00 |
| 5/21/2013 | 5/24/2013 | Company B, Check #7165 | $102,720.00 |
| 7/25/2013 | 7/26/2013 | Company B, Check #7643 | $198,000.00 |
| 9/13/2013 | 9/23/2013 | Company A, Check #1311 | $9,200.00 |
| 9/18/2013 | 9/23/2013 | Company D, Check #012210 | $109,600.00 |
| 10/9/2013 | 10/9/2013 | Company D, Check #012278 | $79,200.00 |
| 10/23/2013 | 10/24/2013 | Company D, Check #012311 | $79,200.00 |
| 11/1/2013 | 11/1/2013 | Company D, Check #012343 | $77,000.00 |
| 11/6/2013 | 11/7/2013 | Company D, Check #012350 | $39,600.00 |
| 11/11/2013 | 11/12/2013 | Company D, Check #012371 | $118,800.00 |
| 11/18/2013 | 11/20/2013 | Company D, Check #012415 | $79,200.00 |
| 12/4/2013 | 12/4/2013 | Company D, Check #012508 | $158,400.00 |
| 12/12/2013 | 12/19/2013 | Company D, Check #012551 | $35,682.38 |

| | | | |
|---|---|---|---:|
| 12/12/2013 | 12/19/2013 | Company E, Check #023708 | $43,093.40 |
| 12/16/2013 | 12/19/2013 | Company E, Check #023750 | $6,140.61 |
| 10/10/2014 | 10/23/2014 | Company A, Check #1491 | $40,000.00 |
| 5/1/2015 | 6/5/2015 | Company B, Check #11259 | $20,000.00 |
| 7/9/2015 | 8/26/2015 | Company B, Check #11917 | $40,000.00 |
| 7/20/2015 | 8/26/2015 | Company B, Check #11998 | $20,000.00 |
| 8/1/2015 | 8/26/2015 | Company A, Check #1243 | $40,000.00 |
| 8/25/2015 | 9/14/2015 | Company B, Check #12408 | $40,000.00 |
| 8/28/2015 | 9/14/2015 | Company B, Check #12487 | $50,000.00 |
| 9/11/2015 | 9/14/2015 | Company B, Check #12558 | $50,000.00 |
| 10/6/2015 | 10/9/2015 | Company B, Check #12856 | $40,000.00 |
| 11/10/2015 | 11/18/2015 | Company B, Check #13061 | $40,000.00 |
| 11/30/2015 | 12/2/2015 | Company B, Check #13123 | $52,991.00 |
| 12/20/2015 | 12/28/2015 | Company B, Check #13154 | $140,823.00 |
| 2/10/2016 | 2/25/2016 | Company B, Check #13317 | $50,000.00 |
| | | | |
| | | **TOTAL SENT TO TINIDRIL AND PAID ON HOWARD'S ACCOUNT** | **$2,522,546.39** |

r. Between 2010 and 2019, HOWARD obtained profits in the amount of at least $2,232,814.00, with which he conducted various financial transactions.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE NOTICE

The defendant is hereby given notice that the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count Two of the Superseding Criminal Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense(s), or any property traceable to such property.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment

(a) A sum of money representing the value of the property involved in the money-laundering offense charged herein in the amount of $2,252,125.00.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty –

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) (made applicable by Title 18, United States Code, Sections 982(b)(1) or Title

10

28, United States Code, Section 2461(c)), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

ROBERT J. HIGDON, JR.
United States Attorney

BY: *signature*
BANUMATHI RANGARAJAN
Assistant United States Attorney

BY: *signature*
WILLIAM GUAPPONE
Trial Attorney
U.S. Department of Justice, Tax Division
Southern Criminal Enforcement